## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SOJOURN CARE, INC. d/b/a<br>SOJOURN CARE OF TULSA, a<br>Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, Secretary of<br>United States Department of Health and<br>Human Services,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 07-CV-375-GKF-PJC |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION

The Department of Health and Human Services ("HHS") may not ignore a Congressional mandate. The challenged hospice cap regulation at issue in this case is contrary to Congress' express mandate to allocate cap room for **each** patient **across** years of service. For this reason, this Court should hold the regulation invalid under the *Chevron* test referred to below. Congress expressly required HHS to allocate cap amounts across years for "**each** such individual to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent year." 42 U.S.C. 1395f(i)(2)(C). Congress' purpose was to avoid a mismatch of cap allocation and revenue.

But HHS took a shortcut, choosing only to allocate each patient's cap room in a single year, explaining that to follow Congress' mandate would be too "difficult." In so doing, HHS ignored Congress' mandate. The question before this Court is **not** whether the regulation is a reasonable interpretation of the statute (*Chevron,* part 2), but rather whether the regulation is in fact **contrary**

to the express requirements of the statute (Chevron part 1). Where, as here, a regulation is contrary to an express Congressional mandate, courts accord no deference.

As a last line of defense, with no supporting evidence, HHS argues that Sojourn Care lacks standing to challenge the regulation. Sojourn Care is a hospice, subject to a $2.1 million repayment demand based upon the flawed cap regulation. And, Sojourn Care has offered unrebutted evidence of injury, reviewed below.

For these reasons, this Court should grant the motion for summary judgment and hold that the regulation, and any cap calculation made thereunder, is invalid because it directly conflicts with Congress' mandate to allocate **each** patient's cap room **across** years of service.

## II.     THE FACTS ARE NOT IN DISPUTE

The statute (42 U.S.C. § 1395f(i)(2)(C)), the regulation (42 C.F.R. 418.309), and the history of the regulation (RJN, Exs. 5-6) are acknowledged and before the Court.

Also acknowledged and before the Court are relevant facts for Sojourn Care, including that: (a) in FY 2003 and FY 2004, Sojourn Care had cumulative cap **surpluses** of $2.1 million (Daucher Decl., Ex. B, pp. 9 and 11) while in FY 2005, Plaintiff had a cap **deficit** of $2.1 million (RJN, Ex. 1); (b) Sojourn Care has an average length of stay of approximately 130 days (Daucher Decl., ¶ 7 and Ex. C thereto); and (c) in FY 2005, Sojourn Care continued to treat many patients first admitted in FY 2004 and a few patients first admitted in FY 2003 (Id. at ¶ 6).

## III.    THE REGULATION IS INVALID UNDER THE CHEVRON TEST

Under *Chevron, U.S.A., Inc. v. NRDC, Inc. et al.,* 467 U.S. 837, 842-843, 104 S.Ct. 2778, 2781-2782, the **first** inquiry is "whether Congress has spoken directly to the precise question at issue." Only if this question is answered in the negative does a Court face the secondary question of whether the regulation is a reasonable interpretation of the statute. *Id.*

In making the first inquiry, whether Congress has directly spoken, no deference is due. *Christensen v. Harris County,* 529 U.S. 576, 588 (2000); *Strickland v. Comm., Maine Dept. of Ag., et al.*, 921 F.Supp 21 (D.Me. 1996). If the regulation conflicts with Congress' express mandate, then it must be invalidated. *First Nat'l Bank of Milaca v. Heimann,* 572 F.2d 1244, 1249 (8th Cir. 1978) (same; case cited by HHS); *see Wilcox v. Ives*, 864 F.2d 915 (1st Cir. 1988) (regulation invalid where it was in "direct conflict with the plain meaning of the statute"; no deference appropriate unless agency's interpretation "is consistent with the language, purpose, and legislative history of the statute").

In *Brown v. Gardner*, 513 U.S. 115 (1994), the Supreme Court invalidated a Veteran's Administration regulation that tacked on a "fault" component to a statute that required the VA to pay compensation for any injury resulting from "hospitalization, medical or surgical treatment." Although the regulation was on the books for 60 years, the Supreme Court did not hesitate to strike down the regulation because the statute simply did not include a fault component:

> "A regulation's age is no antidote to clear inconsistency with a statute, and the fact, again, that § 3.358(c)(3) flies against the plain language of the statutory text exempts courts from any obligation to defer to it. (Citations omitted.)" *Id.* at 122.

In the present case, Congress specifically **required** HHS to modify the "number of beneficiaries" in any given cap calculation "to reflect the proportion of hospice care that **each** such individual was provided in a previous or subsequent accounting year." 42 U.S.C. 1395f(i)(2)(C) (emphasis added). In short, Congress expressly required HHS to allocate cap amounts across years of service for each patient to ensure that cap allocations match revenues.

But, in promulgating the regulation, HHS **admitted** that it was not going to follow Congress' mandate to allocate cap amounts across years of service:

> "Although section 1814(i)(2)(C) [codified at 42 U.S.C. 1395f(i)(2)(C)] of the Act specifies that the cap amount is to be adjusted 'to reflect the proportion of the hospice care that each such

-3-

> individual was provided in a previous or subsequent accounting year …' such adjustment would be **difficult** in that the proportion of the hospice stay occurring in any given year would not be known until the patient dies or exhausted his or her hospice benefits. We believe the proposed **alternative** of counting the beneficiary in the reporting period where the beneficiary used most of the days of covered hospice care will achieve the intent of the statute **without being burdensome**."

(48 F.R. 38,146 at 38,158 (emphasis added), attached to RJN, Ex. 6, pp. 62-63.) This statement is nothing short of HHS' **admission** that it would not follow the Congressional mandate because Congress' mandate was in its opinion "difficult" or "burdensome." Instead of allocating each patient's cap across actual years of service as required, HHS proposed the "alternative" of allocating each patient's entire cap allocation to one year. By using the word "alternative," HHS plainly acknowledged that it was departing from the express instruction of Congress. HHS ignored Congress' mandate. In its Opposition Memorandum, HHS again acknowledges that it did not follow the statute. (Opp., p. 7 ("rather than making a proportional adjustment on a patient-by-patient basis …, HHS proposed … .") As demonstrated below, this shortcut is prejudicial to Sojourn Care and other hospices. For this reason alone, Sojourn Care is entitled to summary judgment that the cap regulation 42 C.F.R. 418.309 is invalid. *See Wilcox, supra*, 864 F.2d at 926 (regulation that contradicts statute is invalid); *First Nat'l Bank of Milaca, supra*, 572 F.2d at 1249 ("If the regulation does conflict with the statute, it cannot stand.").

HHS' case law on reasonableness does not affect the analysis on *Chevron*, part 1, and is improper. (Opp., pp. 15-18.) Moreover, the cases cited are inapposite. (Opp., pp. 18-20.) In *First Nat'l Bank of Milaca*, *supra*, the court construed a statute requiring bank examination fees to be "in proportion to" bank assets. The Comptroller set up a fee schedule that was not **directly** proportional to assets, but that rather, recognizing the obvious economies of scale, charged less on higher asset increments. 572 F.2d at 1247. The 8th Circuit applied the correct *Chevron* test, **first** holding that Congress had not required **directly** proportional fees, but rather had merely required

-4-

that a small bank would not have to pay "more" money for an examination than a larger bank.  *Id.* at 1249.  Next, the court found the Comptroller's sliding scale, that did not require smaller banks to pay more than larger banks, to be reasonable.  *Id.*  This holding cannot be deemed surprising.  *See also British Steel PLC v. United States*, 27 F.Supp.2d 209 (C.I.T. 1998) (finding Congress had **not** spoken directly to the **amount** of countervailing duty; then applying reasonableness test); *compare* 42 U.S.C 1395f(i)(2)(C) (**requiring** reduction of number of beneficiaries to reflect proportion of care delivered to **each** patient in a given year).

In the present case, because the regulation is an "alternative" to Congress' mandate to allocate cap room for each patient across years, the regulation must be invalidated.

### A.   HHS' ALLEGED DIFFICULTY IN FOLLOWING CONGRESS' MANDATE IS LEGALLY IRRELEVANT

HHS' suggestion that such allocations would be "difficult" or "burdensome" is unsupported by any evidence, belied by several facts before this Court, and legally irrelevant.

First, HHS did not find it too difficult to follow the exact same Congressional mandate when a patient received hospice care from more than one provider.  Indeed, HHS regulations specifically allocate cap room across years (and across providers) in such an instance.  (48 F.R. 38,146, attached to RJN, Ex. 6, p. 63 ("… we propose to calculate the percentage of each patient's length of stay in each hospice relative to the total length of hospice stay.  In this way, each hospice would be given credit for the appropriate portion for calculation of the cap amount.").)  In short, HHS is capable of making the Congressionally mandated calculation.  Because HHS can and does make this calculation, any alleged difficulty is without merit.

Authority cited by HHS itself in opposition to Plaintiff's Motion demonstrates the relevance of this showing.  (Opp., p. 20.)  *See American Trucking Assoc., Inc. v. Sheiner*, 483 U.S. 266, 297 (1987) (tax held unconstitutional on commerce clause grounds; **rejecting** state's defense that

proportional allocation would be too difficult based in part upon fact that state does proportionally allocate similar types of taxes).

Second, the naked suggestion that such a calculation would be "difficult" given that the number of patients who live beyond one fiscal year is too great to make the calculation possible is not consistent with the facts. (Opp., p. 7.) Sojourn Care has an average length of stay of 130 days, about 1/3 of a year. This means that the majority of Sojourn Care's patients are admitted and pass away in one fiscal year (i.e., on average any patient admitted from November 1 to July 20 in any given fiscal year will pass away prior to November 1, the end of that fiscal year), **reducing** any alleged burden by about two-thirds.

And, contrary to HHS' suggestion that cap calculations are made immediately upon the close of a fiscal year, in practice HHS' intermediaries take about one year to issue cap letters. For instance, Sojourn Care received its cap demand letter for FY 2005 (ending October 31, 2005) on December 15, 2006 (13.5 months later) (RJN, Ex. 1, p. 17). In that intervening 12 month period, a significant number of patients who received care in the prior fiscal year will likely have passed away in the current fiscal year. Therefore, for the vast majority of patients, the proportional allocation would not be subject to any later readjustment.

Finally, HHS' assertion that it would be difficult to allocate cap room across years is legally irrelevant. *See Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 89 (2002) (rejecting assertion that regulation should be upheld because it was easier to administer; holding that: "Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law' "; noting that: "By its nature, the remedy created by Congress requires the retrospective case-by-case examination the Secretary now seeks to eliminate.").

**IV.    SOJOURN CARE HAS STANDING**

HHS claims that Sojourn Care lacks standing, asserting that Sojourn Care has suffered "no injury" from the fact that the regulation is contrary to the express mandate of the statute. (Opp., p. 11.) Sojourn Care has established standing. Standing exists:

> " '[w]hen the suit is one challenging the legality of government action or inaction . . . [and] the plaintiff is himself an object of the action (or forgone action at issue . . ., there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.' "

*State of Texas v. U.S.*, 05-50754, page 12 (5th Cir. 9/13/2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-562 (1992)). Sojourn Care is a hospice care provider subject to the hospice cap regulation at issue. In FY 2005, HHS required Sojourn Care to repay $2.1 million dollars under a flawed regulation. These facts alone confer standing.

But, Sojourn Care's offer of proof as to standing extended well beyond this showing. HHS did not contest any of the affirmative evidence of injury offered by Sojourn Care:

Sojourn Care has demonstrated that HHS itself **understood** the prejudice and injury that would be caused by ignoring the Congressional mandate and attempted to account for this prejudice by shifting the cap room for patients admitted within 35 days of the end of the fiscal year (i.e., between September 27 – and October 31) to the next fiscal year. (*Cf.* RJN, Ex. 6, p. 63 (HHS first assuming 44 day length of stay, proposing to shift only 22 days of admissions to next year) **with** RJN, Ex. 7 (final rule) p. 126 (HHS assuming 70 day length of stay, shifting 35 days of admissions to next year).) HHS based its regulation upon the **assumption** that average length of stay in any hospice would be only 70 days. The implicit assumption in these shifts by HHS is that to be fair to hospices, HHS would have to shift admissions forward into the next year in proportion to the average length of stay at **each** hospice.

The critical error here is that HHS applied a 35 day shift assuming that average length of stay for each hospice would be 70 days. By definition, this shift does not work for a hospice with a

higher or even lower length of stay. By definition, cap amounts will be mismatched to revenue for such hospices. If a hospice, like Sojourn Care, has a longer average length of stay, then under HHS' own assumptions, too little cap room will be pushed into the next year. In short, cap amounts needed to protect revenue in subsequent years will be trapped in prior years. (*See* Opp., p. 2 (admitting that shift only "roughly reflects" the required proportional allocation.)

Sojourn Care has also demonstrated that its average length of stay in 2005 was approximately 130 days (like many others), longer than the HHS shift accounted for. (Daucher Decl., ¶ 7 (Sojourn Care average length of stay) **and** Ex. A thereto (average length of stay by state).) Because Sojourn Care has a length of stay longer than 70 days, the HHS shift by definition fails to push enough cap room from FY 2003 to FY 2004, and in turn from FY 2004 to FY 2005, resulting inevitably in a substantial deficit in FY 2005. The fact that hospices across **16 states** have average lengths of stay in excess of 70 days demonstrates that the regulation is likely prejudicial to many other hospices as well. And, Sojourn Care has offered unrebutted evidence that in FY 2005 it continued to treat many patients first admitted in FY 2004 and some from FY 2003. (Daucher Decl., ¶ 1.)

The evidence of Sojourn Care's actual cap calculations under the existing regulation explicitly demonstrate the mismatch that HHS itself **anticipated**. Specifically, Sojourn Care had cap **surpluses**[1] of $2.1 million in its first two years with a cap **deficit** of $2.1 million in the third year. For a hospice with average length of stay longer than 70 days, cap amounts are trapped in prior years and therefore cap allocations do not match revenue as required by Congress. For FY 2005, this resulted in HHS' demand that Sojourn Care repay $2.1 million dollars.

---

[1] It is critical to note that cap surpluses are not paid over to the hospice; rather, in the event of a surplus, there is simply no demand for repayment. 42 U.S.C. § 1395f(i)(2).

HHS could have offered this Court an analysis of what Sojourn Care's cap calculations would look like for FY 2003-2005 if HHS allocated each patient's cap room across years. HHS possesses all of the relevant data, having received, reviewed, and paid Sojourn Care for services rendered to **each** hospice patient. But HHS chose not to offer any such evidence.

HHS implies that Sojourn Care may be doing something wrong because its average length of stay is 130 days. (Opp., p. 14.) Such a conclusion is dramatically unfair. As HHS itself concedes, hospice care is available to patients with an **average** life expectancy of six months or less (i.e., 180 days). And, during the course of the last 25 years, as HHS again concedes, Congress has expressly **removed** the individual 210 day cap patient stays, recognizing that some patients will necessarily live beyond the permissible **average** of six months. Sojourn Care's average length of stay remains substantially below the average eligibility expressly authorized by Congress. HHS' callous and irrelevant argument boils down to a claim that Sojourn Care's patients are not dying soon enough.

HHS also suggests that Sojourn Care's problem with the cap may stem from Congress' failure to modify the cap. (Opp., p. 14.) While Sojourn Care certainly believes that Congress' failure to modify the cap **also** poses a problem, there is no doubt that HHS' failure to calculate the cap as Congress mandated, namely in a way that matches cap allocations to actual receipt of revenue, is in and of itself severely prejudicial and injurious.

Finally, HHS' suggestion that any inequity in one year will balance out in later years is demonstrably false. (Opp., p. 12.) The surplus cap room that was allocated to Sojourn Care in FY 2003 and FY 2004 is **forever trapped** in those years; there is no provision in the regulation allowing a carry-forward of such surplus cap room or any other mechanism for recapture.

Sojourn Care is directly interested in, and a victim of, HHS' flawed regulation. For these reasons, Sojourn Care has amply demonstrated its standing in this matter. *Compare Nova Health*

*Systems v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005) (standing found where plaintiff faced "imminent" injury from legislation at issue).

In this case, the harm to Sojourn Care is "actual." It is undisputed that Sojourn Care is **currently** repaying $2.1 million at 12.5% interest over five years for the FY 2005 cap demand. Second, based upon the unchallenged evidence above, Sojourn Care has shown that it is "likely" that proper allocation of each patient's cap room to the respective portions of years in which service is actually rendered will ameliorate Sojourn Care's cap problem.

For these reasons, HHS' suggestion that Sojourn Care lacks standing is not well taken and should be rejected.

## V.  CONCLUSION

For the aforementioned reasons and as set forth in its initial Brief in Support of Summary Judgment, Sojourn Care respectfully requests that the Court enter summary judgment in its favor and against Defendant and declare the cap allocation in 42 C.F.R. §418.309(b) invalid.

Respectfully submitted,

s/Linda G. Scoggins            .
Linda G. Scoggins, OBA #8013
**Scoggins & Cross, PLLC**
204 N. Robinson, Suite 3100
Oklahoma City, OK 73102
(405) 239-4300  Telephone
(405) 239-4305  Facsimile
ATTORNEYS FOR PLAINTIFF
SOJOURN CARE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December, 2007, a true and correct copy of the foregoing was electronically transmitted to the following counsel of record:

Peter D. Keisler
Assistant Attorney General

David E. O' Meillia
United State Attorney

Sheila Lieber
Daniel Bensing (D.C. Bar No. 334268)

U.S. Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Attorneys for the United States of America

                                                s/Linda G. Scoggins                    .
                                                Linda G. Scoggins, Esq.