UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOJOURN CARE, INC. )<br>    )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>MICHAEL O. LEAVITT, Secretary of the )<br>  Department of Health and Human Services )<br>    )<br>    Defendant. )<br>_____) | No. 07-CV-375-GKF-PJC |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. <u>Plaintiff has not demonstrated that it has been injured by the Hospice Cap Rule, and hence plaintiffs have not established that they have standing</u>.

Plaintiff's Response in Opposition to defendant's Motion for Summary Judgment ("Opposition")[1] fails entirely to demonstrate why any harm that plaintiff is suffering is not caused by the <u>statute</u> imposing the hospice reimbursement cap, 42 U.S.C. § 1395f(i)(2)(C), rather than by the Hospice Cap Rule, 42 C.F.R. § 418.309(b)(1), which merely establishes a methodology for the implementation of the statutory cap. Congress specifically limited the amount that hospice providers could receive regardless of how long patients were in hospice care or the nature of the care provided. <u>See</u> H.R. Rep. No. 98-333 (98th Cong. 1st Sess.) at 1 ("intent of the cap was to ensure that payments for hospice care would not exceed what would have been

---

[1] Plaintiff's Opposition incorporates by reference plaintiff's Reply Memorandum in support of plaintiff's Motion for Summary Judgment, ("Reply"). <u>See</u> Opposition at 3.

1

expended by Medicare if the patient had been treated in a conventional setting."). Crucial to an understanding of why plaintiff's harm is caused by that statutory cap, rather than the method of allocation between years embodied in the rule, is plaintiff's admission that while the average length of hospice care is 70 days, plaintiff's average length of stay is 131 days. See Daucher Decl. ¶ 7. Consequently, as plaintiff's own practices are resulting in their billing for charges beyond what Congress has authorized through the cap provision, their alleged injury is caused by the Congressional policy choice to impose a cap (made in 1982 and never modified despite several other Congressional amendments to the hospice cap statute), and not by the Hospice Cap Rule.

  Moreover, plaintiff also fails to come to grips with the fact that regardless of the precise parameters of the hospice cap rule (i.e. whether it assumes a 70-day average stay, or a longer or shorter period), it will not adversely affect plaintiffs, or any other hospice care provider, if analyzed over a multi-year period. If, from the perspective of any particular hospice care provider, "too much" of the cap is allocated in year one and "too little" allocated to year two, the cap would also allocate "too much" room to year two and "too little" to year three. Thus, even according to plaintiff's own reasoning, assuming a 70 day average length say will not necessarily tend to cause cap allocations that are "too high" or "too low" in any particular year. Hence plaintiff's disagreement with the 70 day assumption embodied in the current rule, Opposition at 3, is simply irrelevant to any calculation of the effect, over a multi-year period, of the hospice cap. More importantly, the actual impact of any rule allocating cap time, whether the Secretary's or the one plaintiff reads into the statute, depends entirely upon when patients are admitted to a hospice and upon how long they stay. Plaintiff has not offered any facts to show that they have

been harmed by the cap regulation at all. Plaintiff's alleged harm of $2.1 million stems from Congress's decision to cap payments to hospices to begin with, not any action of the Secretary.

Ultimately, of course, plaintiff has the burden of establishing its standing and it has failed to demonstrate why the Hospice Cap Rule, as opposed to the statute, is the cause of its obligation to repay funds received in FY 2005. See, e.g. Via Christi Regional Medical Center, Inc. v. Leavitt, __F.3d __, (10th Cir. 2007), 2007 WL 4285165 at *16 (providers have the burden of demonstrating that their costs are reasonable); Girling Health Care, Inc., v. Shalala, 85 F.3d 211, 215 (5th Cir. 1996) ("The provider bears the burden of maintaining financial records and statistical data sufficient for proper determination of costs payable under the program."). Plaintiff has not established that it suffered injury in fact from the operation of the Hospice Care Rule and hence it lacks standing to challenge that rule.

2. The Hospice Cap Rule constitutes a reasonable construction of the statutory command to reduce the cap to "reflect" the "proportion" of time patients spent in other cap years

Contrary to plaintiff's repeated assertions, Opposition at 4-6; Reply at 2-5, the use of the word "proportion" in the statutory phrase in question (". . .such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year. . ." 42 U.S.C. § 1395f(i)(2)(C), does not prescribe a specific statutory methodology that the Secretary must use to reduce the beneficiary count to "reflect" hospice care provided in other years. And it certainly does not compel HHS to adopt an unworkable patient-by-patient calculation as the only acceptable method to effectuate the Congressionally-mandated cap. As defendant noted in its motion for summary judgment, courts, in a number of different contexts, have recognized that the use of words or phrases requiring some sort of numerical

calculation leave agencies with the flexibility to adopt any of several reasonable approaches to fulfilling such statutory directives. See MSJ at 19-20. Plaintiff has failed to distinguish these cases. See Plaintiff's Reply at 4-5.

Consequently, the only question is whether the Hospice Cap Rule provides a reasonable approach to implementing the cap, and plaintiff offers no argument for why it does not. The Hospice Cap Rule, which has been on the books and implemented without complaint for 23 years prior to this litigation, fairly "reflects" the "proportion" of hospice care received by patients in each year by utilizing an aggregate approach rather than the cumbersome, and unworkable patient-by-patient calculation plaintiff advocates.

Finally, plaintiff has also failed to address defendant's explanation for why the Hospice Cap Rule does provide for a proportional adjustment where care in more than one hospice is provided. As defendant noted in its MSJ, first, instances of patients moving from hospice to hospice will be rare and hence the administrative burden will be appreciably lower and second, while the formula-based approach adopted by the rule will not matter to hospices over a multi-year period, the same is not the case where care is provided by two more hospices. See MSJ at 9-10. These considerations are absent in the calculation of the cap over more than one year.

For the reasons set forth in defendant's motion for summary judgment, the court should enter summary judgment for defendant or dismiss plaintiff's complaint for lack of standing.

        PETER D. KEISLER
        Assistant Attorney General

        DAVID E. O'MEILLLIA
        United States Attorney


        **Daniel Bensing**
        SHEILA LIEBER
        DANIEL BENSING (D.C. Bar No. 334268)

        U.S. Department of Justice
        Civil Division
        Federal Programs Branch
        P.O. Box 883
        Washington, D.C. 20044
        Telephone: (202) 305-0693
        Fax: (202) 616-8460
        Attorneys for the Secretary of Health and
              Human Services

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 3, 2008 I served the foregoing Defendant's Reply Memorandum in Support of Defendant's Motion for Summary Judgment by regular mail addressed to the following counsel for Plaintiff:

      Linda G. Scoggins
      Scoggins & Cross, PLLC
      204 N. Robinson, Suite 3100
      Oklahoma City, Ok 73102

      **Daniel Bensing**_____
      DANIEL BENSING